STATE ex rel. STRINGFELLOW, Relator, *v.* BOARD OF
COMMISSIONERS OF CHOUTEAU COUNTY, Re-
SPONDENT.

(No. 2,917.)

(Submitted September 22, 1910.  Decided October 13, 1910.)

[111 Pac. 144.]

*County  Seat—Removal—Election—Petition—Signers—Statutes·*
*—Constitution—Mandamus—Defenses.*

Constitutional Law—Self-executing Provisions.
1.  Article XVI, section 2 of the Constitution, providing that the legis-
lative assembly shall have no power to remove a county seat, but that
the same shall be provided for by general law, and that no county seat·
shall be removed unless a majority of the qualified electors of the·
county at a general election, on a proposition to remove the county
seat, shall vote therefor, in so far as it relates to the vote required, is·
a prohibition and is self-executing.

Evidence—County Seat—Removal—Election.
2.  Revised Codes, section 2852, relating to elections for the removal·
of a county seat, provides that, if the petition to the county board is·
signed by a majority of the taxpayers of the county, the board shall
submit the question at the next general election, and requires that the
county commissioners shall compare the petition with the poll-books·
· of the county clerk's office constituting the returns of the last election
held in the county.  *Held*, in the absence of evidence to the contrary,·
it would be presumed that the board compared the names signed to the
petition for an election for the removal of a county seat with the poll-
books of the "last" election.

Counties—County Seat—Removal—Petition for Election—Signers—*Ad·*
*Valorem* Taxpayers.
3.  Revised Codes, section 2852, provides that, if a petition for an elec-
tion for the removal of a county seat is signed by a majority of the·
taxpayers of the county, the board of county commissioners shall sub-
mit the question of removal at the next general election, provided that
the term "taxpayers" shall be deemed to mean *ad valorem* taxpayers,·
and, if the petition shows that it is not signed by a majority of the
legal voters of the county who are *ad valorem* taxpayers, it shall be·
deemed insufficient.  *Held*, that such a petition was sufficient if it was
signed by a majority of the *ad valorem* taxpayers of the county, pro-
vided all the persons necessary to make up such majority were qualified·
voters.

*Mandamus*—Official Duty—Discretion—County Commissioners.
4.  Where a petition signed by a majority of the *ad valorem* taxpayers·
of a county, who were qualified voters, for the change of a county seat,·
as required by Revised Codes, section 2852, was submitted to the county
commissioners, and was denied because it did not contain a majority
of the taxpayers of the county, it must be presumed that the petition·
was found sufficient, except for the fact that the board claimed it
should contain a majority of the taxpayers of the county, which was
determined to the contrary, in which case there was no discretion for·

the board to exercise, and *mandamus* was available to compel them to give legal effect to the petition.

Counties—County Seat—Change—Petition for Election—Withdrawal of Signers.
  5.   Where a petition for an election to change a county seat was presented to the board of commissioners, it was the board's duty to act on the petition as presented; and hence no signer could make an effective withdrawal of his name after the board had passed on the sufficiency of the petition.

Same—County Seat—Removal—Petition—Form.
  6.   A petition for an election for the removal of a county seat was not objectionable because it was made up of several parts or of smaller single petitions which were attached together in order to make one petition, if it contained a sufficient number of signers.

*Mandamus*—County Seat—Change—Petition—Defenses.
  7.   In *mandamus* to compel county commissioners to give effect to a petition for an election to change a county seat, the commissioners were not entitled to defend on the ground that their action was influenced by statements of relator's counsel, and that they acted on the question with undue haste at his request.

ORIGINAL application for writ of mandate, by the state of Montana, on the relation of H. W. Stringfellow, against the Board of County Commissioners of Chouteau County. Writ granted.

*Mr. O. W. McConnell,* in behalf of Relator, submitted a brief and argued the cause orally.

In the petition presented to the board of county commissioners it is recited that the signers to the petition are taxpayers and voters of Chouteau county. This petition is verified and sworn to; so that when it, thus sworn to, was presented to the board, a *prima facie* case was made out in behalf of the petitioners. (*Wilson* v. *Bartlett,* 7 Idaho, 269, 62 Pac. 416; *Mann* v. *Mercer County Court,* 58 W. Va. 651, 52 S. E. 776.)

The respondent has interposed a motion to quash the alternative writ of mandate, and one of the alleged reasons is that this court has no jurisdiction on the subject of this action, for the reason that the Act of the legislature concerning the removal of county seats is unconstitutional. While the power to locate county seats in the first instance belongs to the legislature, that body may delegate this power and leave the selection of the county seat to the electors of the county, without being guilty of an unauthorized delegation of legislative power. (7 Am. &

Eng. Ency. of Law, pp. 1013, 1014.) Laws enacted by which the vote of the people should determine the question of the location of county seats have been acquiesced in by the courts without questioning their validity. (*Territory* v. *Mohave County,* 2 Ariz. 248, 12 Pac. 730; *Calaveras County* v. *Brockway,* 30 Cal. 336; *State* v. *Stearns,* 11 Neb. 104, 7 N. W. 743; *Boren* v. *Smith,* 47 Ill. 482; *McWhirter* v. *Brainard,* 5 Or. 426; *Lake County* v. *State,* 24 Fla. 263, 4 South. 795.)

It is claimed in the answer that there were certain withdrawals of names to the petition for removal, in the hands of the county clerk. "If any of the signers desire to withdraw from a petition for removal of a county seat, they must do so with a degree of formality corresponding with that required in presenting the petition." (*State* v. *Porter,* 145 Ala. 541, 40 South. 144; *De Kalb County Court* v. *Pogue,* 115 Ill. App. 391.) There were no withdrawals or cancellations filed at the time the board acted upon the petition. This court is only concerned with the record that was before the board at the time they denied the petition for removal. (See *Slingerland* v. *Norton,* 59 Minn. 351, 61 N. W. 322; also *State* v. *Boyden,* 21 S. D. 6, 108 N. W. 897, 15 Ann. Cas. 1122; 7 Am. & Eng. Ency. of Law, 1028.)

It is claimed by the respondent that the petition for removal is not a single petition, but is composed of a large number of petitions bound together as one petition. This is an immaterial matter, as held in *McKinney* v. *Bradford County,* 26 Fla. 267, 4 South. 855; *Douglass* v. *Baker County,* 23 Fla. 419, 2 South. 776; *Butler* v. *Mills,* 61 Ark. 477, 33 S. W. 632; *State* v. *Polk County,* 88 Wis. 355, 60 N. W. 266.

*Mr. F. E. Stranahan,* in behalf of Respondent, filed a brief and argued the cause orally.

The legislative enactment concerning the removal of county seats in this state, and particularly section 2855 of the Revised Codes, is in contravention of section 2 of Article XVI of the Constitution of the state of Montana. Our Constitution limits the decision to at least a majority of the qualified electors of the

county voting affirmatively, while the legislature has required but two-thirds of those voting on the proposition to secure the removal. The result may be, therefore, under the legislative provision, that any number of votes less than a majority cast in the affirmative may operate to remove the county seat. "The legislature may fix a criterion for determining the number of voters in a county in order to ascertain whether the proposition for removal has received the required number of votes, but the criterion must be such that it can never operate to effect a removal by a less vote than the Constitution requires." (7 Am. & Eng. Ency. of Law, 2d ed., p. 1033.)

An Act somewhat similar to section 2855 was held unconstitutional in Minnesota. (See *Bayard* v. *Klinge,* 16 Minn. 249.) The provision of the Constitution of Tennessee that a county seat shall not "be removed without the concurrence of two-thirds of the qualified voters of the county" requires the affirmative vote of two-thirds of the qualified voters of the county to authorize such removal. It is not sufficient that two-thirds of the votes cast at the election are in favor thereof. (See *Braden* v. *Stumph,* 16 Lea (Tenn.), 581; *Boulden* v. *Lockhart,* 62 Tenn. (3 Baxt.) 262; also, to the same effect: *State* v. *Winklemeier,* 35 Mo. 103; *People* v. *Wiant,* 48 Ill. 263; *Hogg* v. *Baker* (Ky.), 31 S. W. 726; *State* v. *Lancaster,* 6 Neb. 474; *People* v. *Brown,* 11 Ill. 479; *County Seat of Linn County,* 15 Kan. 500; *State* v. *Sutterfield,* 54 Mo. 391; *Vance* v. *Austell,* 45 Ark. 400; *Chester* v. *Commissioners,* 72 N. C. 486; *People* v. *Warfield,* 20 Ill. 159; *Combs* v. *Stumple,* 11 Lea (Tenn.), 26.) A careful study of the authorities discloses that the rule is different where the removal is permitted at a special election. In such cases the required proportion *voting on the proposition* is allowed to govern, and for that reason, it seems, the Constitution of Montana carefully guards against such a contingency by requiring the submission of the question at such a general election only.

Nor is the limitation found in the Constitution self-executing. In 1884, and before our Constitution was adopted, the supreme court of Colorado passed upon this question. It was held that

the provision in the Colorado Constitution, "No county seat shall be removed unless a majority of the qualified electors of the county, voting on the proposition at a general election, vote therefor," is a constitutional limitation and not self-executing. (*Alexander* v. *People,* 7 Colo. 155, 2 Pac. 894.)   If this statute is void, it is void *ab initio,* and the Constitution not being self-executing there is no law for the election.   The action of the board of county commissioners in making the comparisons provided for by section 2852 of the Revised Codes involves extensive examinations and investigations and a judicial or *quasi* judicial discretion, hence *mandamus* is not the proper remedy.   A writ of mandate was sought in the state of Nevada to compel the board of county commissioners to submit the question of removal at an election, but the supreme court of that state held that it could not control the action of the board by *mandamus* for the reason that the action of the board was judicial.   (*State* v. *Board of County Commrs.,* 8 Nev. 309.)   *Mandamus* will not lie to compel a person to undo an act which the law has compelled him to do and he has done.   (*Maxwell* v. *Burton,* 2 Utah, 595.)   In the case at bar, the law has compelled the respondent board to act upon a petition, and it has acted thereon, and this proceeding is an attempt to compel the respondent to undo that act.   Nor will the writ issue commanding a subordinate tribunal to reverse its decision when it has acted in a judicial capacity on a question properly brought before it.   (*Chase* v. *Blackstone Canal Co.,* 27 Mass. (10 Pick.) 244.)   It does not lie to compel officers exercising judicial functions to set aside or vacate a decision.   (*State* v. *Churchill,* 37 Neb. 702, 56 N. W. 484.)   It lies to compel the exercise of discretion in public officers, but not to control such discretion.   (*Seymour* v. *Ely,* 37 Conn. 103.)   *Mandamus* is not a proceeding to correct errors, but only to compel action, and it does not lie to review the action of county commissioners in rejecting from the petition of voters for a special election to vote on the question of changing the county seat a sufficient number to reduce the number below the requisite three-fifths.   (*State* v. *Nemaha County Commrs.,* 10 Neb. 32, 4 N. W. 373.)   It will not

be granted to compel the supervisors of a county to proceed according to law to submit to the electors of their county at the next general election therein a proposition for changing the location of the county seat. (*State* v. *Juneau County Supervisors,* 38 Wis. 554.)

Where a board exercises a discretion on investigation, *mandamus* will not lie to review or control such discretion. (*State* v. *Rickard,* 16 Mont. 145, 50 Am. St. Rep. 476, 40 Pac. 210, 28 L. R. A. 298; *State* v. *Smith,* 23 Mont. 44, 57 Pac. 449.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. J. A. Poore,* Assistant Attorney General, also appearing in behalf of Respondent, submitted a brief on motion to quash the alternative writ.

MR. JUSTICE SMITH delivered the opinion of the court.

This is an original proceeding for a writ of mandate to compel the board of county commissioners of Chouteau county to submit to the electors the question of the removal of the county seat from Fort Benton to Havre at the next general election.

The affidavit of the relator reads as follows:

"H. W. Stringfellow, being first duly sworn according to law, deposes and says: 'That he is the relator above named, and is a resident of Havre, county of Chouteau, state of Montana, and is an *ad valorem* taxpayer of said county, and has been such resident and *ad valorem* taxpayer for more than two years last past. That he is now, and was, a qualified elector, and voted at the last general election in Chouteau county, Montana, held in November, 1908, and his name appears upon the poll-books of Chouteau county. That affiant is the owner of property in Havre, in Chouteau county, Montana, and is beneficially interested in the location of the county seat of said county, and the question of the change of the county seat in Chouteau county is one affecting affiant and the people generally in said county.'

"That heretofore, to-wit, on the sixth day of September, 1910, at a regular meeting of the board of county commissioners of

Chouteau county, Montana, there was duly and regularly presented to said board, in open session, a petition addressed to said board, reciting that 'the undersigned, your petitioners, who are taxpayers and voters of the county of Chouteau, state of Montana, hereby petition and pray for the removal of the county seat of the said Chouteau county from its present location at Fort Benton, in said Chouteau county, to the city of Havre, in said Chouteau county, and that an election be held to determine whether or not such removal must be made.'

·   ''That there was attached to said petition, and in verification thereof, the affidavit of Victor R. Griggs, which is in words and figures as follows, to-wit:

'' 'State of Montana, ⎱ ss.
County of Chouteau, ⎰

'' 'Victor R. Griggs, being first duly sworn according to law, deposes and says: That he is a resident of Chouteau county, Montana, and is over the age of twenty-one years. That he has carefully examined the annexed petition for the removal of the county seat of Chouteau county, Montana, from Fort Benton to the city of Havre, and has carefully counted the names signed to said petition. That the number of signers upon said petition is 1,535. That affiant has carefully examined and compared the said petition with the poll-books in the county clerk's office of Chouteau county, Montana, constituting the returns of the last election held in Chouteau county, for the purpose of ascertaining whether such petition bears the names of a majority of the voters listed therein. That affiant has made a similar comparison of the names signed to the petition with those appearing upon the listed assessment-roll of the county for the purpose of ascertaining whether the petition bears the names of a majority of the *ad valorem* taxpayers as listed in said assessment-roll. That it appears from the said poll-books and from the assessment-roll that there is a total of 920 *ad valorem* taxpayers who are legal voters in Chouteau county, Montana. That a majority of this number would be 461. That the petition hereto attached contains 520 names, being more than a majority

of the legal voters of Chouteau county, Montana, who are *ad valorem* taxpayers thereof.   That said comparisons have been accurately made, and that the said count is full, true, accurate, and correct.

" 'VICTOR R. GRIGGS.'

"Which said affidavit was duly subscribed and sworn to.

"That the number of signers to said petition were 1,535. That the number of voters at the last general election held in Chouteau county in November, 1908, were 2,200, as appears from the poll-books in the county clerk's office, constituting the returns of the last election held in said county.   That there are 1,623 names upon the listed assessment-roll of Chouteau county. That on said assessment-roll there are names of women, corporations, partnerships, and nonresidents who are not entitled to vote in said county, and whose names do not appear upon the poll-books in said county.   That there are also included in said list the names of persons who are not *ad valorem* taxpayers. That there are also included in said number of taxpayers the names of persons who were not voters at the last general election and whose names do not appear on the poll-books of said county.   That there are only 920 *ad valorem* taxpayers whose names appear upon the assessment-roll of Chouteau county, and whose names also appear upon the poll-books of said county, showing them to have been voters at the last general election held in said county.   That a majority of the *ad valorem* taxpayers who are legal voters in said county is 461.

"That the petition presented to the board of county commissioners praying the removal of the county seat from Fort Benton to Havre contained the names of 520 *ad valorem* taxpayers whose names also appeared upon the poll-books constituting the returns of the last general election, showing them to be legal voters of Chouteau county, Montana.   That the names of more than a majority of the legal voters of Chouteau county who are *ad valorem* taxpayers thereof were signed to said petition when the same was presented to said board of county commissioners.

"That the aforesaid facts were proved, and notwithstanding said petition was legal and sufficient and contained the requisite number of names as provided by law, the said board of county commissioners denied said petition, for the reason only that it did not contain the names of a majority of the taxpayers of Chouteau county, and a resolution denying said petition was passed and indorsed upon said petition for removal as follows: 'In the matter of petition presented to the board for the removal of the county seat of Chouteau county from Fort Benton to Havre, Montana, on motion the board unanimously denied the petition, for the reason that the petition does not contain the names of a majority of the taxpayers of Chouteau county. Jere Sullivan, Chairman.'

"That it was not necessary or requisite, and the law did not require upon said petition the names of a majority of the taxpayers of Chouteau county, and yet the said board of county commissioners, in excess of their jurisdiction and of the requirements prescribed by law, denied said petition and refused to submit the question of removal of the county seat to the voters of Chouteau county."

Respondent board for answer admitted the allegations of certain paragraphs of the affidavit, and, in effect, denied that it had any knowledge or information sufficient to form a belief as to the truth of the averments contained in certain other paragraphs. The following affirmative allegations were then set forth:

"That on the sixth day of September, 1910, and while this respondent board was in regular session as the board of county commissioners of Chouteau county, Montana, Mr. Odell W. McConnell, an attorney at law, and who is the attorney for the relator in the above-entitled action, appeared before said respondent board, together with one Victor R. Griggs, and represented to said respondent board that he, the said Odell W. McConnell, appeared before said respondent board as the attorney for all the petitioners, including the relator in this action, whose names appeared on the petition which he, the said Odell W.

McConnell, then and there produced for the first time and presented to said respondent board for its action thereon, and which said petition is the petition referred to in the affidavit of the relator on file in this action, and said attorney, representing said petitioners, then and there declared to said respondent board that a careful comparison had been made by the said Victor R. Griggs of the said petition with the poll-books in the county clerk's office constituting the returns of the last election held in said Chouteau county, and that he, the said Victor R. Griggs, had made a similar comparison of the names signed to said petition with those appearing upon the listed assessment-roll of the county, and also presented and referred said respondent board to the affidavit of the said Victor R. Griggs which was attached to said petition, and which is set forth in full in said affidavit for said writ herein, and that said lists and said petition had been checked and rechecked, and the said attorney then and there reported and declared to said respondent board what the conclusions from such comparisons the said Victor R. Griggs had made, and the said attorney then and there admitted to this respondent board that said petition did not contain a majority of the taxpayers of said county, but informed this board that said petition did contain a majority of the legal voters of said county who were also taxpayers, and declared to this respondent board that it would not be necessary for said board to take the time and trouble necessary for the board itself to make said comparisons as required by the laws of the state of Montana, and that, if said board did make said comparisons as so required, a large amount of time would be consumed thereby, and that he, the said attorney, wanted an immediate decision of said board, and assuming that the said board would decide that the said petition must contain a majority of the taxpayers of the county, and that said board would for that reason deny the petition, the said attorney declared that he was in a hurry to get the matter before this honorable court in order to have the decision of this court upon said question, and the said attorney declared to this board that the

affidavit of said Victor R. Griggs was sufficient for said board, and that thereupon alone they were entitled to make their decision.

"And this respondent board further alleges that it relied upon the representations and statements of said attorney, and believing that it was his purpose only to secure from said board the denial of said petition upon the sole question as to whether it was necessary to have a majority of the *ad valorem* taxpayers of said county as signers of said petition, and in order to accommodate said attorney and place him in a position whereby he might have the question determined by this honorable court, the said respondent board denied said petition accordingly solely upon the admissions of said attorney and the said affidavit showing that the said petition did not contain the names of a majority of the *ad valorem* taxpayers of said county.

"And this respondent board further alleges that the whole proceedings hereinabove referred to after the first presentation of said petition, and up to the time of the denial thereof, did not occupy more than about five minutes in time, and that, in considering said petition and in denying the same, the said respondent board did not make the comparisons of the names thereon with the names appearing on the poll-books or on the assessment list of said county, but acted solely upon the admission of said attorney and the said Victor R. Griggs in his said affidavit that the said petition did not contain the names of at least a majority of all the taxpayers of said county as shown by the assessment list of said county. And this respondent board realizes that it acted hastily at the request of said attorney, and without due consideration, and without making the comparisons aforesaid as required by law, and that, in that respect, it did fail to proceed in the exercise of its jurisdiction, but such failure was procured by the said attorney as aforesaid, and this respondent board alleges that it is proper, just, and equitable that this board should reconsider its action in denying said petition without having made said comparisons and without having had an opportunity to investigate and exercise

its discretion and *quasi* judicial functions in its decision upon the question of the sufficiency of said petition, and this respondent board now desires an opportunity to take up the question of its reconsideration of its said action in order that it may fulfill its duty as prescribed by the statutes of the state of Montana in that behalf.

"And this respondent further alleges that since the filing of said petition on said sixth day of September, 1910, a large number of the signers thereof have filed with the clerk of said Chouteau county withdrawals and cancellations of their names which appeared on said petition at the time the same was presented as aforesaid, and that the same persons so withdrawing and canceling their names from said petition withheld the filing of said withdrawals and cancellations aforesaid and did not file the same before the said petition was filed, relying upon the supposition that this respondent board would comply with the statutes of Montana, and make the comparisons provided by said statutes, and that the compliance of said board with said statutes would occupy a sufficient length of time to allow said petitioners so withdrawing and canceling their names as aforesaid to file said withdrawals and cancellations in time after the filing of said petition and before the final action of said board thereon to enable said board to consider and pass upon said withdrawals and cancellations.

"And this respondent board alleges upon its information and belief that the said attorney, Odell W. McConnell, and the said Victor R. Griggs, and each of them, well knew that a large number of said petitioners had prepared to file their withdrawals and cancellations of their names from said petition, and that, acting upon such knowledge, they urged this respondent board to deny said petition and secured the hasty action of this board thereon in order that the said petitioners so desiring to file their withdrawals and cancellations of their names from said petition would not have an opportunity to do so between the time of the filing of said petition and the action thereon by said board, and that said petitioners had no time or oppor-

tunity and were not apprised of the fact in sufficient time to afford them an opportunity to file their said withdrawals and cancellations of their names from said petition, for the reason that they had no notice or information of the filing of said petition prior to the action of this board thereon.

"And this board further alleges upon information and belief that there are at this time on file with the clerk of said Chouteau county 105 withdrawals and cancellations of the names of petitioners signed to said petition, and that among said number there are names of sufficient legal voters of said county who are *ad valorem* taxpayers thereof to make the number, in the event that the said withdrawals and cancellations shall be allowed after due deliberation, less than 460 names on said petition of legal electors and voters of said county who are *ad valorem* taxpayers thereof, and that it is just and proper that this respondent board should have an opportunity to consider and determine the said withdrawals and cancellations aforesaid, and this respondent board alleges that it desires an opportunity to make an investigation thereof, and to determine fairly and justly all of the matters and things concerning the present sufficiency of the said petition.

"And the respondent board further alleges that the petition referred to by the relator in his affidavit herein is not one single petition, but that it is composed of a large number of petitions which are bound together into what the relator claims to be one instrument and one petition, and this respondent alleges upon his information and belief that the said petitions so bound together as aforesaid have been in process of formation and completion for about two years last past, and that many of the signatures upon said petition are of former residents of Chouteau county who had long since disposed of their property and have permanently departed from said Chouteau county without the intention of returning, and that a large number of the names appearing upon said petitions are of former residents of Chouteau county who are long since dead.

"And this answering respondent further alleges upon its information and belief that the said Victor R. Griggs, in making the comparison referred to by him in his affidavit and in the application for said writ referred to, did not compare the names on said petition or petitions with the names of the taxpayers as they appear on the assessment list of Chouteau county for the present year of 1910, but that he compared the same with some former assessment list of said Chouteau county."

Both parties have moved for judgment on the pleadings, and this court is asked to finally dispose of the case after consideration of the motions.

Section 2 of Article XVI of the state Constitution reads as follows: "The legislative assembly shall have no power to remove the county seat of any county, but the same shall be provided for by general law; and no county seat shall be removed unless a majority of the qualified electors of the county, at a general election on a proposition to remove the county seat, shall vote therefor; but no such proposition shall be submitted oftener than once in four years."

Sections 2854 and 2855, Revised Codes, read thus:

"Sec. 2854.   In voting on the question, each elector must vote for the place in the county which he prefers, by placing opposite the name of the place the mark X.

"Sec. 2855.   When the returns have been received and compared and the results ascertained by the board, if two-thirds of all the legal votes cast by those voting on the proposition are in favor of any particular place, the board must give notice of the results by posting notices thereof in all the election precincts of the county, and by publishing a like notice in a newspaper printed in the county at least once a week for four weeks."

1. It is claimed that section 2855, Revised Codes, is in conflict with the Constitution, in that it provides that, if two-thirds of all the legal votes cast by those voting on the proposition are in favor of any particular place, that fact shall determine the result of the election, while the Constitution provides, it is as-

serted, that no county seat shall be removed unless a majority of the qualified voters of the county shall vote therefor. The learned counsel for respondent say in their brief: "The result may be, therefore, under the legislative provision, that any number of votes less than a majority, cast in the affirmative, may operate to remove the county seat." Relator's counsel insists, however, that we are not called upon to decide the point at this time. He suggests that the situation referred to may never arise; that this case has to do, not with the result of an election which may be had, but with the machinery provided by law for submitting the question to a vote. On the other hand, it is argued that the limitation found in the Constitution is not self-executing, and, if the legislature has failed to provide a constitutional minimum vote to decide the result, then the statute laws relating to the removal of county seats cannot be followed to a final conclusion, and should, therefore, not be invoked for the purpose of holding an election which would be a mere nullity in effect. The case of *Alexander* v. *People ex rel. Schofield,* 7 Colo. 155, 2 Pac. 894, is cited in support of the proposition that the constitutional provision is not self-executing. In that case, however, we find this language employed in the course of the opinion: "If the statute, when passed, should make no requirement at all on the subject of the vote, then, doubtless, effect would be given to the affirmative implication in the constitutional provision and a majority vote be held sufficient." The constitutional provision of the state of Colorado which was under discussion in that case is substantially like ours, *supra,* while the statute provided that not less than two-thirds of all the votes cast should be necessary to decide the result.

We are of opinion that the constitutional provision above quoted is self-executing. It is strictly a prohibition, and the uniform rule is that such a provision is self-executing. (8 Cyc. 754; 6 Am. & Eng. Ency. of Law, 2d ed., 913; *Yerger* v. *Rains,* 4 Humph. (Tenn.) 259; *American Union Tel. Co.* v. *Western Union Tel. Co.,* 67 Ala. 26, 42 Am. Rep. 90; *Hickman* v. *City of Kansas,* 120 Mo. 110, 41 Am. St. Rep. 684, 25 S. W. 225,

23 L. R. A. 658; *Washingtonian Home* v. *Chicago,* 157 Ill. 414, 41 N. E. 893, 29 L. R. A. 798.)

We do not agree with counsel for respondent that in *Alexander* v. *Schofield* the supreme court of Colorado held that the provision of the Colorado Constitution similar to the provision of our Constitution quoted above is not self-executing. The point decided by the Colorado court is that the provision does not amount to a declaration that not more than a majority vote can be required to cause the removal of a county seat. A provision of a Constitution which is not self-executing is one which requires legislation to make it effective. It is inconceivable that any legislation could make the constitutional prohibition above any more effective than it is.

We may assume without deciding that section 2855, Revised Codes, is invalid in so far as it attempts to authorize the removal of a county seat upon a vote less than a majority of the qualified electors of the county as that phrase is used. But that portion of the section or the entire section for that matter can be eliminated altogether, and ample provisions are still found in the law for conducting the election, canvassing and declaring the result. The first point made by the respondent is overruled.

2. Again, it is urged that it does not appear in the affidavit what assessment-roll of Chouteau county was used in making the comparison with the names signed to the petition for removal. It is to be presumed, however, in the absence of evidence to the contrary, that the official duty devolving upon the commissioners was regularly performed. The particular presumption here to be indulged is that the commissioners fully complied with the provisions of section 2852, Revised Codes, which reads as follows: "If the petition is signed by a majority of the taxpayers of such county, the board must at the next general election submit the question of removal to the electors of the county; provided that the term 'taxpayers' used in this section shall be deemed to mean '*ad valorem* taxpayers,' and that for the purpose of testing the sufficiency of any petition which may be presented to the county commissioners as pro-

vided in this section, the county commissioners shall compare such petition with the poll-books in the county clerk's office constituting the returns of the last election held in their county, for the purpose of ascertaining whether such petition bears the names of a majority of the voters listed therein, and they shall make a similar comparison of the names signed to the petition with those appearing upon the listed assessment-roll of the county for the purpose of ascertaining whether the petition bears the names of a majority of the *ad valorem* taxpayers as listed in said assessment-roll; and if such petition then shows that it has not been signed by a majority of the legal voters of the county who are *ad valorem* taxpayers thereof, it shall be deemed insufficient, and the question of removal of the county seat shall not be submitted."

3. It is submitted that *mandamus* is not the proper remedy, inasmuch as the commissioners were vested with a judicial or *quasi* judicial discretion in acting upon the petition, and, having acted, they cannot be coerced into undoing that act by the courts. The essential requisite of a petition for the removal of a county seat is that it shall be signed by a majority of the legal voters of the county who are *ad valorem* taxpayers thereof. It is not necessary that it be signed by a majority of the legal voters of the county. It is sufficient when it is signed by a majority of the *ad valorem* taxpayers of the county, provided that all of the persons necessary to make up such majority are qualified electors. (Section 2852, Revised Codes, *supra.*) Tested by this rule, it is not claimed, as we understand it, that the petition, when presented, was insufficient. Assuming, as we must, that the county commissioners made the comparisons with the poll-books and listed assessment-roll, as commanded by section 2852, Revised Codes, *supra,* it then becomes incumbent upon the court to ascertain from the resolution of the board whether it determined, after such comparison, that the petition was insufficient. Clearly it did not so determine. No such defense is contained in the answer, and the resolution shows that the petition was denied "for the reason that the petition does

not contain the names of a majority of the taxpayers of Chouteau county.'' No attempt has been made to show that the formal resolution does not recite the facts as they existed at the time it was made. We must conclude, therefore, that the board determined that, aside from the fact that it did not contain the names of a majority of the taxpayers of the county, the petition was sufficient. The members cannot now be heard to say that they failed to comply with the law. This being so, discretion could no longer be exercised. It was the duty of the board to give to the petition its full legal effect and act upon it. Such action may be compelled by *mandamus*. Its performance involves a purely ministerial duty resulting from an office. (Revised Codes, sec. 7214.)

4. The allegation in the answer that certain of the petitioners have determined since the board acted or now desire to withdraw their names we regard as irrelevant and immaterial. It was the duty of the board to act upon the petition as presented; and, while we have no doubt that any signer might have withdrawn his name by timely action, we are equally satisfied that no action of his, after the board passed upon the sufficiency of the petition, could be effective. The fact that the petition presented to the board is made up of several parts or smaller single petitions which were attached together in order to make one petition is no objection to the petition as presented. (7 Am. & Eng. Ency. of Law, 2d ed., p. 1031.)

5. We are somewhat in doubt as to how we should dispose of those portions of the answer wherein it is alleged that the respondent board was influenced in its actions, or at least that such actions were unduly expedited by the statements of counsel for the relator. We finally conclude, however, that the presumption of right conduct on the part of public officials is sufficient to overcome the suggestion that the action of the board might have been different had it not been for the presence and statements of counsel.

It is ordered that a peremptory writ of mandate issue directing the respondent board to meet and take such action as is

necessary under the law·to submit the question of the removal of the county seat of Chouteau county to the qualified electors of the county on the eighth day of November, 1910. Relator to have his costs in this proceeding. *Remittitur* forthwith.

*Writ issued.*

MR. JUSTICE HOLLOWAY concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.